## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **RAAM GLOBAL ENERGY COMPANY,** | § | **CASE NO. 15-35615** |
| *et al.* | § | |
| | § | **(Chapter 11)** |
| | § | **(Joint Administration Requested)** |
| DEBTORS. | § | **(Emergency Hearing Requested)** |

**EMERGENCY MOTION (A) FOR AUTHORITY TO FILE A CONSOLIDATED LIST OF CREDITORS; (B) FOR AUTHORITY TO FILE A CONSOLIDATED LIST OF 50 LARGEST UNSECURED CREDITORS; (C) SETTING OF BAR DATES; AND (D) FOR APPROVAL OF THE FORM AND MANNER OF NOTIFYING CREDITORS OF THE COMMENCEMENT OF THE CASES AND OTHER INFORMATION**

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE IN THE UNITED STATES WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

EMERGENCY MOTION (A) FOR AUTHORITY TO FILE A CONSOLIDATED LIST OF CREDITORS;
(B) FOR AUTHORITY TO FILE A CONSOLIDATED LIST OF 50 LARGEST UNSECURED CREDITORS;
(C) SETTING OF BAR DATES; AND (D) FOR APPROVAL OF THE FORM AND MANNER OF NOTIFYING
CREDITORS OF THE COMMENCEMENT OF THE CASES AND OTHER INFORMATION
US 3410208v.4                                                                 **Page 1 of 16**

**TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:**

The above-captioned debtors and debtors in possession (collectively, the "Debtors"),[1] file this *Emergency Motion (a) for Authority to File a Consolidated List of Creditors; (b) for Authority to File a Consolidated List of 50 Largest Unsecured Creditors; (c) Setting of Bar Dates; and (d) for Approval of the Form and Manner of Notifying Creditors of the Commencement of the Cases and Other Information* (the "Motion") and in support respectfully state as follows:

## JURISDICTION AND PROCEDURAL BACKGROUND

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157.  This Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

2.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      On October 26, 2015 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), thereby commencing the above-captioned cases (the "Cases").

4.      Since the Petition Date, the Debtors have continued to operate and manage their businesses as debtors in possession pursuant to Bankruptcy Code §§ 1107(a) and 1108.

5.      As of the date hereof, an official committee of unsecured creditors (the "Committee") has not yet been appointed in the Cases.

---

[1] The Debtors are RAAM Global Energy Company [2973], Century Exploration New Orleans, LLC [4948], Century Exploration Houston, LLC [9624], and Century Exploration Resources, LLC [7252].

**EMERGENCY MOTION (A) FOR AUTHORITY TO FILE A CONSOLIDATED LIST OF CREDITORS;
(B) FOR AUTHORITY TO FILE A CONSOLIDATED LIST OF 50 LARGEST UNSECURED CREDITORS;
(C) SETTING OF BAR DATES; AND (D) FOR APPROVAL OF THE FORM AND MANNER OF NOTIFYING
CREDITORS OF THE COMMENCEMENT OF THE CASES AND OTHER INFORMATION**

## EMERGENCY CONSIDERATION

6.     The Debtors request emergency consideration of this Motion.  The Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of their operations.  Any delay in granting the relief requested could hinder the Debtors' operations and cause irreparable harm.  As such, the Debtors believe that emergency consideration is necessary and request that this Motion be heard at the Debtors' First Day Hearings.

## STATEMENT OF FACTS

**A.     Business Overview**

7.     RAAM Global Energy Company ("RAAM") is an independent oil and natural gas exploration and production company engaged in the exploration, development, production, exploitation, and acquisition of oil and natural gas properties.  The other Debtors are wholly-owned subsidiaries of RAAM, and RAAM provides administrative, technical, financial, and strategic planning support to their subsidiaries.

8.     The Debtors' producing assets are located offshore in the Gulf of Mexico and onshore in Louisiana, Texas, Oklahoma, and California, and the Debtors maintain offices in Lexington, Kentucky and New Orleans, Louisiana.  The Debtors own an office building in Houston, Texas.  As of September 30, 2015, the Debtors had estimated total proved oil and natural gas reserves of 8,570 MMBoe (26% oil).  For the six months ended June 30, 2015, the Debtors' net daily production averaged 7,116 barrels of oil equivalent per day (BOEPD), which generated revenue of approximately $33.4 million.

9.     The Debtors have traditionally focused on acquiring assets in and around the United States Gulf Coast.  Over the last decade the Debtors have worked to diversify their asset

EMERGENCY MOTION (A) FOR AUTHORITY TO FILE A CONSOLIDATED LIST OF CREDITORS;
(B) FOR AUTHORITY TO FILE A CONSOLIDATED LIST OF 50 LARGEST UNSECURED CREDITORS;
(C) SETTING OF BAR DATES; AND (D) FOR APPROVAL OF THE FORM AND MANNER OF NOTIFYING
CREDITORS OF THE COMMENCEMENT OF THE CASES AND OTHER INFORMATION
US 3410208v.4                                                                                         **Page 3 of 16**

base through the acquisition and development of both conventional onshore assets and long-lived unconventional resource plays that are capable of supporting sustainable growth. The Debtors' projects during 2014 and the first half of 2015 were focused on three main areas: shallow waters offshore, onshore conventional assets in Texas, and conventional and unconventional assets in California and the Mid-Continent area. In recent years, the Debtors have invested close to $100 million on large 3-D seismic surveys in the Gulf of Mexico and onshore in Louisiana and Texas in order to enhance their prospect generation capabilities, and the Debtors have invested over $1.5 billion in developing oil and gas assets since their inception.

10. The Debtors' current drilling program focuses on their core area in Breton Sound located offshore in State of Louisiana waters. This has historically been a very successful field for the Debtors, and the Debtors recently completed a successful well that is currently in production. The Debtors presently have an ongoing development portfolio of prospects that it desires to drill.

11. Additional information concerning the Debtors and their financial condition and results of operations, on a consolidated basis, can be found in RAAM's annual, quarterly, and current reports filed with the Securities and Exchange Commission ("SEC") through May 5, 2015, which can be accessed at www.sec.gov and at RAAM's website, http://www.raamglobal.com/.[2]

---

[2] On May 5, 2015, RAAM filed Form 15 with the SEC to notify the Commission of its desire to terminate the filing of registration statements and related reports required under the Securities Exchange Act of 1934. Prior to that time, RAAM was a voluntary filer with the SEC.

EMERGENCY MOTION (A) FOR AUTHORITY TO FILE A CONSOLIDATED LIST OF CREDITORS;
(B) FOR AUTHORITY TO FILE A CONSOLIDATED LIST OF 50 LARGEST UNSECURED CREDITORS;
(C) SETTING OF BAR DATES; AND (D) FOR APPROVAL OF THE FORM AND MANNER OF NOTIFYING
CREDITORS OF THE COMMENCEMENT OF THE CASES AND OTHER INFORMATION
US 3410208v.4                                                                                          Page 4 of 16

B.    **Common Stock**

12.    RAAM is a privately held company, and as of September 30, 2015, RAAM had 61,433 outstanding shares of common stock.  Howard Settle, RAAM's Chairman, and former Chief Executive Officer and President, holds approximately 48% of RAAM's outstanding common stock.  As of that date, RAAM's directors and executive officers as a group (eight persons that include Mr. Settle) held approximately 66% of RAAM's common stock.

C.    **Secured Debt**

13.    On September 12, 2014, Century Exploration New Orleans, LLC, Century Exploration Houston, LLC, and Century Exploration Resources, LLC entered into a Fifth Amended and Restated Credit Agreement with Wilmington Trust, National Association, as administrative agent and the lenders party thereto (the "<u>Fifth Amended and Restated Credit Agreement</u>"), and RAAM entered into the Fourth Amended and Restated Guaranty in connection therewith.  The Fifth Amended and Restated Credit Agreement provides the Debtors with an $85.0 million term loan facility (the "<u>Term Loan Facility</u>") that is secured by a first lien on substantially all of the Debtors' real and personal property (with certain exceptions).  As of September 30, 2015, approximately $63.8 million was outstanding under the Term Loan Facility.

14.    On September 24, 2010, RAAM completed an offering of $150.0 million senior secured notes at a coupon rate of 12.5% (the "<u>Original Notes</u>").  On July 15, 2011, RAAM completed the issuance and sale of $50.0 million aggregate principal amount of additional 12.5% Senior Notes (the "<u>Additional Notes</u>").  The Additional Notes have identical terms, other than the issue date and issue price, and constitute part of the same series as the Original Notes.

EMERGENCY MOTION (A) FOR AUTHORITY TO FILE A CONSOLIDATED LIST OF CREDITORS;
(B) FOR AUTHORITY TO FILE A CONSOLIDATED LIST OF 50 LARGEST UNSECURED CREDITORS;
(C) SETTING OF BAR DATES; AND (D) FOR APPROVAL OF THE FORM AND MANNER OF NOTIFYING
<u>CREDITORS OF THE COMMENCEMENT OF THE CASES AND OTHER INFORMATION</u>
US 3410208v.4                                                                                                    **Page 5 of 16**

15.     On April 11, 2013, RAAM successfully completed the issuance and sale of $50.0 million aggregate principal amount of additional 12.5% senior secured notes due 2015 (the "New Additional Notes," and together with the Original and Additional Notes, the "Notes").  The New Additional Notes are additional notes issued pursuant to the indenture dated as of September 24, 2010 (the "Base Indenture"), pursuant to which RAAM issued the Original and Additional Notes, as supplemented by the First Supplemental Indenture dated as of July 15, 2011 (the "First Supplemental Indenture"), the Second Supplemental Indenture dated as of April 11, 2013 (the "Second Supplemental Indenture"), and the Third Supplemental Indenture dated as of April 11, 2013 (the "Third Supplemental Indenture," and together with the Base Indenture, First Supplemental Indenture and the Second Supplemental Indenture, the "Indenture").  The New Additional Notes have identical terms, other than the issue date and issue price, and constitute part of the same series as the Original and Additional Notes.  As of September 30, 2015, a total of $238.0 million notional amount of the Notes was outstanding.

16.     The Notes are guaranteed on a senior secured basis by Century Exploration New Orleans, LLC, Century Exploration Houston, LLC, and Century Exploration Resources, LLC. The Notes and the guarantees are secured by a security interest in substantially all of the Debtors' assets to the extent they constitute collateral under the Term Loan Facility, subject to certain exceptions.  Pursuant to an Intercreditor Agreement, the lien securing the Notes is subordinated and junior to liens securing the Term Loan Facility.

17.     The Debtors did not make the scheduled interest payment to the holders of the Notes that was due on April 1, 2015 which was a default under the Indenture.  This non-payment

also constituted a default under the Fifth Amended and Restated Credit Agreement.  Total unpaid and accrued interest at July 31, 2015 was $25.4 million.

18.     On April 30, 2015, the Debtors entered into the *Forbearance Agreement to 12.50% Senior Secured Notes Indenture* with holders of approximately 94% of the face value of the Notes and the *Forbearance Agreement and Second Amendment to the Fifth Amended and Restated Credit Agreement* with Wilmington Trust, National Association, as administrative agent, and the lenders under the Term Loan Facility (collectively, and as amended, the "Forbearance Agreements").  The Forbearance Agreements expired on September 14, 2015.

**D.     Other Significant Obligations**

19.     The Debtors have a promissory note dated August 8, 2005 with GE Commercial Finance Business Property Corporation ("GECF") related to the construction of their Houston office building.  On October 1, 2012, EverBank purchased GECF and is now known as Business Property Lending, Inc.  The balance owed to EverBank was $2.3 million at September 30, 2015. The note requires monthly installments of principal and interest in the amount of approximately $27,000 until September 1, 2025.

20.     Century Exploration New Orleans, LLC and the Bureau of Ocean Energy Management ("BOEM") entered into various leasing agreements for specific exploration and production activity.  Century Exploration New Orleans, LLC is required to obtain one or more surety bonds in order to secure Century Exploration New Orleans, LLC's performance under the obligations relating to such leasing agreements.  Ace American Insurance Company ("ACE") agreed to issue certain of such bonds in the estimated aggregate amount of $39,630,000 in favor of BOEM and as required by BOEM under the leasing agreements.  In connection with its

**EMERGENCY MOTION (A) FOR AUTHORITY TO FILE A CONSOLIDATED LIST OF CREDITORS;**
**(B) FOR AUTHORITY TO FILE A CONSOLIDATED LIST OF 50 LARGEST UNSECURED CREDITORS;**
**(C) SETTING OF BAR DATES; AND (D) FOR APPROVAL OF THE FORM AND MANNER OF NOTIFYING**
**CREDITORS OF THE COMMENCEMENT OF THE CASES AND OTHER INFORMATION**
US 3410208v.4                                                                                              **Page 7 of 16**

issuance of such bonds, ACE and Century Exploration New Orleans, LLC entered into the Funds Disbursing Agreement dated October 23, 2014, and a related Escrow Agreement with Bank of America as escrow agent (collectively, the "ACE Bonding Agreement"), that requires Century Exploration New Orleans, LLC to provide funds for the escrow as security for ACE.  The ACE Bonding Agreement contemplates the Debtors funding $750,000 per month until March 31, 2017 into an escrow account for the benefit of ACE, and the balance of such escrow account is approximately $9.9 million as of September 30, 2015.  As of the Petition Date, the Debtors believe they are fully in compliance with the applicable regulatory requirements.

21.    In the ordinary course of business, the Debtors utilize an assortment of vendors, including drilling contractors, labor and repair contractors, parts and equipment suppliers, pipeline companies, heavy machinery and equipment lessors, hydrocarbon transporters, laborers, professionals, and employee benefits providers.  As of the Petition Date, unsecured trade and vendor claims aggregate approximately $3.3 million for all of the Debtors, which amount excludes deficiency claims for any secured creditors, if any.

**E.    Events Leading to Chapter 11**

22.    A confluence of factors in 2014 and 2015 led to the Debtors' need to pursue a financial restructuring.

23.    First, there has been a historic decline in the prices of crude oil and natural gas since the summer of 2014.  These declines have adversely affected the Debtors' revenues and cash flows from operations.  The Debtors' realized pricing is primarily driven by the West Texas Intermediate price for crude oil and the spot market prices for natural gas production. The Debtors historically engaged in derivative activities that primarily included the use of floors,

**EMERGENCY MOTION (A) FOR AUTHORITY TO FILE A CONSOLIDATED LIST OF CREDITORS;**
**(B) FOR AUTHORITY TO FILE A CONSOLIDATED LIST OF 50 LARGEST UNSECURED CREDITORS;**
**(C) SETTING OF BAR DATES; AND (D) FOR APPROVAL OF THE FORM AND MANNER OF NOTIFYING**
**CREDITORS OF THE COMMENCEMENT OF THE CASES AND OTHER INFORMATION**
US 3410208v.4                                                                                                    **Page 8 of 16**

costless collars, and futures transactions in order to minimize the downside risk from adverse price movements but allow for the realization of upside profits if available. The Debtors' derivative counterparties were limited to their secured lenders, which helped to minimize any potential non-performance risk. On April 20, 2015, the Company liquidated its hedge positions for $10.8 million and used those funds to reduce the outstanding amount owed under the Term Loan Facility.

24. Second, although the Debtors have actively worked with investment banking advisors to refinance the Notes, due to the current economic environment the Debtors have been unable to raise cash or identify capital resources from other sources such as bank funding, private investment, or the public debt and equity markets.

25. Third, during September 2013, the Debtors determined that they could not meet the financial certifications required to obtain permits to develop its offshore Ewing Banks 920 (EB 920) Project in the Gulf of Mexico, due in large part to the substantially increased Worst Case Discharge assumptions imposed by BOEM. As a result, the proved undeveloped reserves associated with the EB 920 Project no longer met the requirements of reasonable certainty to remain booked as proved reserves at the end of the third quarter of 2013 which adversely impacted the Debtors' reserves and impacted the Debtors' ability to refinance the Notes. This resulted in a write-off of 8.4 million barrels of oil and largely contributed to a ceiling test write-down of $277 million and an after-tax loss of $186 million for the nine months ended September 30, 2013.

26. Fourth, in May of 2013, the Flipper Field in Texas suffered a catastrophic collapse. In December 2012, this field was producing 1,960 BOEPD and in May 2013, after all

**EMERGENCY MOTION (A) FOR AUTHORITY TO FILE A CONSOLIDATED LIST OF CREDITORS;**
**(B) FOR AUTHORITY TO FILE A CONSOLIDATED LIST OF 50 LARGEST UNSECURED CREDITORS;**
**(C) SETTING OF BAR DATES; AND (D) FOR APPROVAL OF THE FORM AND MANNER OF NOTIFYING**
**CREDITORS OF THE COMMENCEMENT OF THE CASES AND OTHER INFORMATION**
US 3410208v.4                                                                                                    **Page 9 of 16**

four wells were severely damaged, the Field was producing 166 BOEPD – a loss of 1,794 BOEPD.  Furthermore, the Company was forced to direct much of its technical efforts and drilling capital in 2013 and 2014 to drilling new wells to reestablish production, hold the leases, and maintain the reserves.

27.     The combination of these factors has impaired the Debtors' liquidity and compelled the Debtors to seek a restructuring of their liabilities in order to maximize the value of their assets for the benefit of their creditors and other constituencies.

28.     The Debtors previously sought to restructure their liabilities pursuant to an exchange offer and consent solicitation that was initiated on June 4, 2015 (the "Exchange Offer").  The Exchange Offer contemplated, among other terms, that if holders of all Notes tendered their Notes in the Exchange Offer, such holders of Notes would receive their pro rata share of $50,000,000 in the aggregate principal amount of new notes maturing on June 30, 2019 and an aggregate amount of 1.17 million shares of RAAM's common stock, which would represent 95% of the outstanding shares of RAAM's common stock following the Exchange Offer, subject to dilution pursuant to the exercise of certain warrants.  The closing of the Exchange Offer was conditioned, among other things, on at least 99% of the aggregate principal amount of outstanding Notes having been validly tendered and not validly withdrawn in the Exchange Offer (the "Minimum Tender Condition").

29.     The Exchange Offer terminated on August 20, 2015.  Holders of approximately 94.77% of the principal amount of outstanding Notes tendered their Notes to be exchanged; however, this was insufficient to meet the Minimum Tender Condition.

EMERGENCY MOTION (A) FOR AUTHORITY TO FILE A CONSOLIDATED LIST OF CREDITORS;
(B) FOR AUTHORITY TO FILE A CONSOLIDATED LIST OF 50 LARGEST UNSECURED CREDITORS;
(C) SETTING OF BAR DATES; AND (D) FOR APPROVAL OF THE FORM AND MANNER OF NOTIFYING
CREDITORS OF THE COMMENCEMENT OF THE CASES AND OTHER INFORMATION
US 3410208v.4                                                                                            Page 10 of 16

30.     The combination of the factors noted above and the failure of a sufficient number of holders of Notes to tender their Notes in the Exchange Offer to meet the Minimum Tender Condition compelled the Debtors to negotiate with their creditors regarding Chapter 11 proceedings in order to address liquidity concerns and maximize the value of their assets for the benefit of their creditors and other constituencies.

31.     For the last several months, the Debtors and their investment bankers have undertaken a thorough marketing process seeking third party stalking horse bidders.  The Debtors were at one point close to finalizing a purchase agreement with a stalking horse bidder for a portion of its assets, but the potential agreement fell through due to market conditions. While there remains interest in the Debtors' assets by third parties, the Debtors have been unable to secure an acceptable third party stalking horse bid at this time after a significant marketing process.

32.     The Debtors are presently negotiating a credit bid stalking horse purchase agreement with the holders of approximately 99% of the outstanding debt under the Term Loan Facility, and the Debtors are seeking to present a credit bid stalking horse purchase agreement and bid procedures to the Court before November 6, 2015.  Such credit bid stalking horse purchase agreement and bid procedures will create a defined sale process, and the Debtors hope that interested parties will bid on its assets in such process to maximize the value of their estates.

## RELIEF REQUESTED

### A.     Consolidated Creditor's Matrix

33.     Pursuant to Rule 1007(a)(1) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), a debtor shall file "a list containing the name and address of each entity

EMERGENCY MOTION (A) FOR AUTHORITY TO FILE A CONSOLIDATED LIST OF CREDITORS;
(B) FOR AUTHORITY TO FILE A CONSOLIDATED LIST OF 50 LARGEST UNSECURED CREDITORS;
(C) SETTING OF BAR DATES; AND (D) FOR APPROVAL OF THE FORM AND MANNER OF NOTIFYING
CREDITORS OF THE COMMENCEMENT OF THE CASES AND OTHER INFORMATION

US 3410208v.4                                                                                          Page 11 of 16

included or to be included on Schedules D, E, F, G, and H . . . ."  FED. R. BANKR. P. 1007(a)(1).

Although the list of creditors usually is filed on a debtor-by-debtor basis, in a complex

chapter 11 bankruptcy case involving more than one debtor, the debtors may file a consolidated

creditor matrix.  *See General Order in the Matter of Procedures for Complex Chapter 11 Cases,*

Exhibit G, *available at* http://www.txs.uscourts.gov/sites/txs/files/tx_ch11_comp_rules.pdf.

34.     Because the preparation of separate lists of creditors for each Debtor would be

expensive, time consuming, and administratively burdensome, the Debtors respectfully request

authority to file one consolidated list of creditors (the "Creditors Matrix") for all of the Debtors.

**B.      Consolidated List of 50 Largest General Unsecured Creditors**

35.     Pursuant to Bankruptcy Rule 1007(d), a debtor shall file "a list containing the

name, address and claim of the creditors that hold the 20 largest unsecured claims, excluding

insiders . . . ."  FED. R. BANKR. P. 1007(d).  Because a large number of creditors are shared

amongst the Debtors, the Debtors request authority to file a single, consolidated list of their 50

largest general unsecured creditors (the "Top 50 List").  The Top 50 List will help alleviate

administrative burdens, costs, and the possibility of duplicative service.  Although they reserve

the right to do so in the future, in this Motion, the Debtors are not requesting authority to (a) file

consolidated schedules of assets and liabilities and statements of financial affairs or

(b) substantively consolidate the Debtors.[3]

---

[3] Pursuant the Debtors' *Emergency Motion Seeking Extension of Time to File Schedules of Assets and Liabilities, Current Income and Expenditures, Executory Contracts and Unexpired Leases, and Statements of Financial Affairs* filed contemporaneously herewith, the Debtors are requesting an extension of the time within which they must file their respective schedules and statements.

### C.      Bar Dates

36.      Bankruptcy Rule 3003(a) provides that "[t]he court shall fix . . . the time within which proofs of claim or interest may be filed."  FED. R. BANKR. P. 3003(a).  Bankruptcy Local Rule 3003-1(a) provides that, in chapter 11 cases, "unless otherwise ordered by the court or governed by [subsection (b)], proofs of claim and proofs of interest must be filed within 90 days after the first date set for the meeting of creditors under section 341(a), except that a proof of claim filed by a governmental unit must be filed within 180 days after the order for relief." Local Bankruptcy Rule 3003-1(a).  However, Bankruptcy Local Rule 3003-1(b) provides that Bankruptcy Rule 3003(a) does not apply to complex chapter 11 cases.  BLR 3003-1(b).

37.      The Debtors filed a *Notice of Designation as Complex Chapter 11 Cases* requesting complex chapter 11 bankruptcy case treatment.  Accordingly, the Debtors request that the Court set bar dates for filing proofs of claim and proofs of interest in the Cases.  Specifically, the Debtors request that the Court require (a) unsecured creditors and equity security holders to file proofs of claim and proofs of interest within 90 days and (b) governmental entities to file proofs of claim within 180 days, each after the first date set for the meeting of creditors under Bankruptcy Code § 341(a).

### D.      Service of the Notice of Commencement

38.      Bankruptcy Rule 2002(a) provides, in relevant part, that "the clerk, or some other person as the court may direct, shall give the debtor, the trustee, all creditors and indenture trustees at least 21 days' notice by mail of: (1) the meeting of creditors under § 341 or § 1104(b) of the Code . . . ."  FED. R. BANKR. P. 2002(a).  Subsection (f) provides that notice of the order for relief shall be sent by mail to all creditors. FED. R. BANKR. P. 2002(f).

**EMERGENCY MOTION (A) FOR AUTHORITY TO FILE A CONSOLIDATED LIST OF CREDITORS;
(B) FOR AUTHORITY TO FILE A CONSOLIDATED LIST OF 50 LARGEST UNSECURED CREDITORS;
(C) SETTING OF BAR DATES; AND (D) FOR APPROVAL OF THE FORM AND MANNER OF NOTIFYING
CREDITORS OF THE COMMENCEMENT OF THE CASES AND OTHER INFORMATION**
US 3410208v.4                                                                                                    **Page 13 of 16**

39.     Through BMC Group, Inc., the Debtors' proposed noticing and claims agent (the "<u>Noticing and Claims Agent</u>"), the Debtors propose to serve the Notice of Commencement, substantially in the form attached hereto as **<u>Exhibit A</u>**, to all parties entitled to notice of commencement of the Cases to advise them of the setting of the claims bar date and the Bankruptcy Code § 341 meeting of creditors.  Service of the single Notice of Commencement will not only avoid confusion among creditors, but will prevent the Debtors' estates from incurring unnecessary costs associated with serving multiple notices to the parties listed on the Debtors' voluminous creditors' matrix.  Accordingly, the Debtors submit that service of a single Notice of Commencement is warranted.

## NOTICE

40.     Notice of this Motion has been provided by e-mail, facsimile, or overnight delivery to: (a) the Office of the United States Trustee for the Southern District of Texas; (b) the Debtors; (c) counsel to the Debtors; (d) counsel to the lenders under the Term Loan Facility; (e) counsel to ACE American Insurance Company; (f) counsel to certain holders of the Notes; (g) counsel to the administrative agent under the Term Loan Facility; (h) counsel to the indenture trustee and collateral agent under the Notes; (i) the Debtors' 50 largest unsecured creditors (on a consolidated basis); (j) those persons who have formally appeared in the Cases and requested service pursuant to Bankruptcy Rule 2002; (k) the Securities and Exchange Commission; (l) the Internal Revenue Service; and (m) all other applicable government agencies to the extent required by the Bankruptcy Rules and the Bankruptcy Local Rules.

## PRAYER

41.     The Debtors respectfully request that this Court enter an order: (a) authorizing the Debtors to file a consolidated list of creditors; (b) authorizing the Debtors to file a consolidated list of their 50 largest unsecured creditors; (c) setting the bar dates for filing proofs of claim and proofs of interest; (d) approving the form and manner of notifying creditors of the commencement of the Cases and other information; and (e) granting such other and further relief to which the Debtors may be justly entitled.

Dated: October 26, 2015

Respectfully submitted,

**VINSON & ELKINS LLP**

By:   */s/ Bradley R. Foxman*
     Harry A. Perrin, SBT # 1579800
     John E. West, SBT # 21202500
     Reese A. O'Connor, SBT # 24092910
     First City Tower
     1001 Fannin Street, Suite 2500
     Houston, TX 77002-6760
     Tel:  713.758.2222
     Fax:  713.758.2346
     hperrin@velaw.com; jwest@velaw.com
     roconnor@velaw.com

     and

     William L. Wallander, SBT # 20780750
     Bradley R. Foxman, SBT # 24065243
     Trammell Crow Center
     2001 Ross Avenue, Suite 3700
     Dallas, Texas 75201
     Tel:  214.220.7700
     Fax: 214.999.7787
     bwallander@velaw.com; bfoxman@velaw.com

     **PROPOSED ATTORNEYS FOR THE DEBTORS**

**CERTIFICATE OF SERVICE**

I certify that on October 26, 2015, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

     */s/ Bradley R. Foxman*
     One of Counsel

**EMERGENCY MOTION (A) FOR AUTHORITY TO FILE A CONSOLIDATED LIST OF CREDITORS; (B) FOR AUTHORITY TO FILE A CONSOLIDATED LIST OF 50 LARGEST UNSECURED CREDITORS; (C) SETTING OF BAR DATES; AND (D) FOR APPROVAL OF THE FORM AND MANNER OF NOTIFYING CREDITORS OF THE COMMENCEMENT OF THE CASES AND OTHER INFORMATION**